



11-CV-01293-CMP

# UNITED STATES DISTRICT COURT
### for the
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| MATTHEW L. FRASE, | ) | CASE NO **C11-1293** JLR |
| Plaintiffs, | ) | |
| v. | ) | VERIFIED COMPLAINT |
| U.S. BANK, N.A.; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC.; | ) | |
| LSI TITLE AGENCY, INC., | ) | |
| | ) | |
| Defendants, | ) | JURY TRIAL DEMANDED |

Plaintiff, MATTHEW FRASE, proceeding without counsel, hereby serves Verified Complaint and alleges claims against Defendants U.S. BANK, N.A. ("USB"); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"); LSI TITLE AGENCY, INC. ("LSI") and as grounds states:

## PARTIES AND VENUE

1. Plaintiff MATTHEW FRASE is a *sui juris* resident of the State of Washington and over the age of eighteen (18), and the legal owner of the residential property identified hereinbelow as 510 Allison Way, Nooksack, WA 98276.

2. Defendant, U.S. BANK, N.A. (hereinafter "USB") is and was at all times material

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

Summons issued Sent 04/3206

1   hereto a national association whose address is <u>80 S 8th St Ste 224, Minneapolis, MN</u>

2   <u>55402-2106</u>.

3   3.  Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

4   ("MERS") is and was at all times material hereto a Delaware corporation with its

5   
6   principal place of business being located in the Commonwealth of Virginia whose

7   address for service of process is believed to be <u>1818 Library Street, Suite 300, Reston,</u>

8   <u>Virginia, 20190</u>.

9   4.  Defendant, LSI TITLE AGENCY, INC. is and was at all times material hereto an

10  Illinois corporation and whose address is listed as; <u>13920 SE Eastgate Way, Suite</u>

11  
12  <u>115, Bellevue, WA 98005</u>, and whose Registered Agent for service of process is: <u>CT</u>

13  <u>CORPORATION SYSTEMS, 1801 West Bay Dr. NW, STE 206, Olympia, WA</u>

14  <u>98502</u>.

15  5.  The residential property the subject of this action (hereafter the "Property") is located

16  at <u>510 Allison Way, Nooksack, WA 98276</u> in Whatcom County, Washington (APN

17  
18  4004293842430000) and is legally described as:

19          LOT 31, VILLAGE OF NOOKSACK, RECORDED ON DECEMBER 28,
        2005, UNDER AUDITOR'S FILE NUMBER 2051204867, RECORDS OF
20      WHATCOM COUNTY, WASHINGTON.

21  6.  Venue is proper in this Court under 28 USC §1391 because the affected subject

22  Property is located in Washington; the Defendants have substantial contacts within

23  Washington; the substantial events and acts necessary or precedent to the bringing of

24  
25  this lawsuit occurred or accrued in Whatcom County, Washington.

26  7.  Plaintiff is proceeding Pro Se without assistance of counsel and is unschooled in law,

VERIFIED COMPLAINT                                    Matthew L. Frase, **Plaintiff**
                                                     **510 Allison Way**
                                                     **Nooksack, WA 98276**
                                                     **(360) 778-1496**

Page 2 of 13

1
2
3
4
5
6

requesting the court accept direction from *Haines v. Kerner*, 404 U.S. 519 (1972), *Boag v. MacDougall*, 545 US 360 (1982), *Puckett v. Cox* 456 F2d 233 (1972 Sixth Circuit USCA), and *Conely v. Gibson*, 355 US 41 at 48(1957), wherein the court has directed those who are unschooled in law, making pleadings shall have the court look to the substance of the pleadings rather than the form.

7

**JURISDICTION**

8
9
10
11
12
13
14
15
16
17
18
19
20

8.  This action arises under Federal Question 28 USC §1331 and this Court has Jurisdiction under 15 USC §1640 TILA; 12 USC §2601-2609 RESPA and implementing regulations 24 CFR part 3500; 15 USC §§ 41-58, FTCA and implementing regulations 16 CFR §433.2; 15 USC §1692 FDCPA; 15 USC §1608 FCRA; 42 USC §§1981-1986, Equal Rights Act; 31 USC §5311 Banking Secrecy Act/Patriot Act and implementing regulations 31 CFR §103.11; 5 USC § 552, The Privacy Act; 12 USC §5301 Dodd-Frank Wall Street Reform and Consumer Protection Act (P.L. 111-203); 26 USC § 856, §2039, §2041, §2514b and other provisions of the U.S. Tax Code; This Court has supplemental jurisdiction over any remaining state law claims under 28 USC §1367(a) because the state law claims are so related to the federal claims that they from part of the same case or controversy.

21
22
23

9.  This Court has supplemental jurisdiction over any remaining state law claims under 28 USC §1367(a) because the state law claims are so related to the federal claims that they from part of the same case or controversy.

24
25
26

10. This case also arises under the Washington Deed of Trust Act, RCW 61.24 *et. seq* (DTA) and the Washington Consumer Protection Act, RCW 19.86 (CPA), the

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

Commercial Code RCW 62A, the Washington Securities Act, RCW 61.20.

**Material Facts Common to All Counts**

11. The chain of title for the subject Property shows the plaintiff holding undisputed clear legal title and equitable title up until September 26, 2007, pursuant to the Statutory Warranty Deed recorded in Whatcom County, Washington under Auditor's file number 2071000745 (copy attached).

12. Plaintiff is the author of the unregistered/unsecured Note referenced in the common law document entitled "Deed of Trust" recorded in Whatcom County, WA, under Auditor's file no. 2071000747 (copy attached) and Plaintiff dictated the terms of the unregistered Note and Plaintiff has personal firsthand knowledge of the said terms.

13. There is no evidence the Plaintiff's unregistered/unsecured Note and or Deed of Trust was or is registered/secured in the WASHINGTON UCC registry or subject to Uniform Commercial Code which Washington has codified as RCW 62A.

14. Pursuant to Plaintiff's Affidavit, Plaintiff denies the Note relied upon by the Defendant(s) is the same Note referenced in the said Deed of Trust and thus Plaintiff disputes the validity of the alleged debt..

15. Pursuant to Plaintiff's Affidavit, Plaintiff has seen no evidence that the Beneficiary in fact accelerated the Note due date or declared the Plaintiff in default.

16. Plaintiff has not acquiesced to the Defendant(s) non-judicial foreclosure proceedings.

17. On or about May 9th, 2011, Defendant(s) slandered title to the subject Property and injured the Plaintiff by recording a Notice of Trustee Sale in the public records of Whatcom County Washington under Auditor's File No. 2110500790.

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

**CLAIMS FOR RELIEF:**

18. The Plaintiff incorporates all preceding paragraphs in these allegations.

19. <u>Disparity</u>. There is a federal question as follows: to contest an alleged default, to restrain a trustee's sale, to contest a trustee's material violations pursuant to Washington's DTA **(RCW 61.24. et. seq.; esp. RCW 61.24.030(8)(j), RCW 61.24.127, RCW 61.24.130)** the Plaintiff's only remedy is recourse to the Courts; but, the Courts have deemed that requests for production of the Note lack merit[1]. Plaintiff is <u>potentially</u> cut off from the said remedy unless *Equity* provides a balance, which it can, by also barring any '<u>alleged</u>' default under that Note to avoid creating a "disparity" between classes of persons (borrower and lender), a violation of civil rights. The DTA confers no power to foreclose a contested 'alleged' default and there is no other law requiring the Plaintiff to produce actual payment or proof of payment to cure an 'alleged' default for obvious reasons. It could be extortive if the default is falsely alleged and strip the Plaintiff of basic civil rights protected under title 42 USC §§1981-1986 if not somehow balanced by the Court. Hence, the Plaintiff is entitled, upon request, to restraint of the Trustee's Sale until the 'alleged' default is 'proven' because the

---

[1] See *Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d. 1178, 1181 (D. Ariz. 2009), ["Courts have routinely held that Plaintiff's 'show me the note' argument lacks merit."], citing *Ernestberg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *5 (D.Neve. Jan. 22, 2009); *Putkkuri v. Recontrust Co.*, No. 08-cv-1919-WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009); *San Diego Home Solutions, Inc. v. Recontrust Co.*, No. 08-cv-1970 L(AJB), 2008 WL 5209972, at *2 (S.D.Cal. Dec. 10, 2008); *Wayne v. HomEq Servicing, Inc.*, No. 2:08-cv-00781-RCJ-LRL, 2008 WL 4642595, at *3 (D.Nev. Oct. 16, 2008); as well as; *Freeston v. Bishop, White & Marshall, P.S.* [2010 WL 1186276] (W.D. Wash., Mar. 24, 2010.)(quoting *Diessner v. Mortgage Electronic Registration Systems*, 618 F.Supp.2d 1184, 1187, (D. Ariz. 2009) (collecting case)); *Wright v. Accredited Home Lenders*, [2011 WL 39027 (W.D. Wash., Jan 3, 2011)(citing *Freeston*, [2010 WL 1186276]).

VERIFIED COMPLAINT

Matthew L. Frase, <strong>Plaintiff</strong><br>
510 Allison Way<br>
Nooksack, WA 98276<br>
(360) 778-1496

Plaintiff disputes the 'alleged' default.

20. Breach of Contract - unanswered QWR: Plaintiff sent multiple Qualified Written Requests to the Defendant, USB, and to date Plaintiff has never received any response and/or received an inadequate response that failed to comply with 12 U.S.C. § 2605(e). Plaintiff disputes that the Defendant, USB is in compliance with RESPA. A copy of the Plaintiff's Qualified Written Request is attached as an exhibit.

21. Equitable Estoppel - invalid debt: Plaintiff alleges that Defendant, LSI TITLE AGENCY, INC. is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 USC §1692 – 1692p, by failing to verify the alleged debt. Plaintiff disputes the alleged debt and requested verification of the debt. Plaintiff has received no verification of the debt to date. The Defendants are required to cease and desist collection activities until the debt is verified. A copy of Plaintiff's request for validation of debt is attached as an exhibit.

Secondly, it appears the Defendant(s) are the factor/purchaser and/or agents of the factor/purchaser of defaulted loans. Therefore the Defendant(s) are further subject to the FDCPA. The other Defendant(s) (not LSI TITLE AGENCY, INC.) failed to offer to validate the debt, never sent a dunning letter, and took or are threatening non-judicial action to collect the unsecured alleged debt all of which violates FDCPA.

Plaintiff is entitled to relief pursuant to the FDCPA.

22. Erroneous Credit Reporting: Defendant, USB violated the Fair Credit Reporting Act (FCRA), 15 USC § 1608, by reporting of the alleged debt/obligation on the Plaintiff's credit report. Plaintiff properly disputed this alleged debt. Plaintiff properly disputed

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

this alleged debt to credit reporting companies. To date Plaintiff has received no validation of the debt but the matter remains on Plaintiff's credit report at the request of Defendant USB and received no response. A copy of the Plaintiff's dispute letter is attached as an exhibit.

23. Foreclosure of Incorrect Note: Pursuant to Plaintiff's Affidavit of Note Maker, Plaintiff denies the Defendant(s) are foreclosing under or on the correct Note. Plaintiff disputes the authenticity of the purported Note relied upon by the Defendants.

24. Forfeiture on Foreclosure: Ordinarily, Lenders like the original Lender U.S. BANCORP MORTGAGE PROFESSIONALS, LLC are required to use accrual accounting which requires them to report the entire $461,160.80 of interest income receivable on the Plaintiff's purported loan account as income for the tax year the loan closed unless they transferred the purported Loan to a tax exempt REMIC/REIT within 90 days of closing (26 USC §856). Defendant USB does not appear to be a tax exempt REMIC/REIT. Thus, Plaintiff believes there is an unresolved tax matter and if so the Defendant LSI's proposed sale of Plaintiff's property is a Prohibited Transaction pursuant to 26 USC §857(b)(6)(B)(iii) and §1221(a)(1). If these taxes were not paid, Plaintiff as the 'donor' has the right pay them and invoke the right of recoupment and setoff. "The donor may be deemed to have paid the tax by ordering the donee to pay it to the IRS." *Estate of Sachs v. Comm'r*, 88 T.C. 769, 778 (1987), aff'd F.2d (1988 WL 94421)(1988). Plaintiff HEREBY orders the donee and/or donee's successor to pay the tax due to the IRS.

25. Recoupment and Setoff: Pursuant to 15 USC §77b(a)(1); 15 USC § 78c(a)(10); RCW

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

21.20.005(12)(a); RCW 21.20.310(9) the Plaintiff's Note is in fact a non-negotiable Security (financial asset). It guarantees Plaintiff the right of recoupment and setoff pursuant to CFR 16 § 433.2, 15 U.S.C. §1640 if the loan contract is breached. It was taken subject to the Plaintiff's claims and defenses. There is no evidence of the Defendant(s) standing to foreclose non-judicially.

26. False Claim – failed endorsement(s): The Plaintiff's Note is part of Plaintiff's non-negotiable Security and does not actually have a holder in due course, per se, but has more of a common law holder for value. Each successor in interest must endorse the Note to transfer the Security as a 'unit'. Failure to endorse it for a transfer will effect the successor's forfeiture on foreclosure and the Plaintiff may invoke the right of recoupment and setoff. Plaintiff has not seen the Note the Defendant(s) rely on, thus Plaintiff alleges it to have missing or incomplete endorsements and therefore Defendant(s) have no standing to foreclose.

27. Erroneous Alleged Default: Without knowing who the true beneficiary is, which can only be determined by examining the successive intervening endorsement to the Note, the Defendants have only an alleged a default was declared by a purported beneficiary. The Plaintiff disputes and contests the alleged default by right because there is no evidence the purported Note relied upon by the Defendant(s) exists.

28. Material Violations – Washington Deed of Trust Act. Plaintiff is unaware of any evidence that the purported Note was ever endorsed or transferred to the Defendant, USB. According to the questionable Assignment of Deed of Trust the alleged beneficiary, U.S. BANCORP MORTGAGE PROFESSIONALS, LLC was

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

Page 8 of 13

1    purportedly replaced with the Defendant, USB on 05/09/2011 which is approximately

2    9 months after the alleged default occurred. It appears Defendant USB is involved in

3    factoring in which case it is not a true beneficiary pursuant to RCW 61.24.005(2).

4    Furthermore the Appointment of Successor Trustee which Defendant LSI relies upon

5    is prematurely executed on 4/26/2011 which is about 2 weeks before Defendant USB

6

7    had the power to make the appointment.

8    29. Slander of Title – Assignment of Deed of Trust. The mere fact that an entity

9    (MERS) is named beneficiary of a deed of trust is insufficient to enforce, assign

10   or otherwise convey the obligation if that party (MERS) is not named on the Note

11   as well. The original Lender's customary business practice is to endorse the Note

12   to a tax exempt REIT/REMIC or GSO/GSE within 3 – 90 days of closing and Deed

13   of Trust supposedly followed it thus the Defendant MERS had no right establish a

14

15   lien priority but did establish a false lien priority, slandered title and injured the

16   Plaintiff by recording the purported Assignment of Deed of Trust.

17   30. Slander of Title – Notice of Trustee's Sale. There is no evidence that the Defendant(s)

18   are within the statutory and equitable parameters required when they executed the

19   Notice of Default and recorded the Notice of Trustee's Sale which slandered title to

20   the Plaintiff's property. The Notice of Default only alleges a default it does not prove

21   a default. The Defendants foreclosure process is a scandalous and impertinent

22   inference that the Plaintiff defaulted/failed to pay his obligation, not a proven fact.

23

24   Defendant(s) have slandered title and injured the Plaintiff by recording the Notice of

25   Trustee's Sale.

26

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

31. <u>Declaratory Relief – Foreclosure Documents</u>: This is an action for declaratory relief which is being brought pursuant to 28 USC § 2201 and FRCR 57 to determine as to whether Assignment of Deed of Trust relied upon by the Defendants is fraudulent or invalid since there are no corresponding endorsements of the Note; and if so, to determine if the subsequent foreclosure documents i.e. Appointment of Successor Trustee, Notice of Default, Notice of Trustee's Sale, even a threatened Trustee's Deed are invalid.

32. Declaratory Relief - MERS: This is an action for declaratory relief which is being brought pursuant to 28 USC § 2201 and FRCR 57 to determine as to whether Defendant MERS has any right under Washington law to act arbitrarily and independent of the actual beneficiary without being named on the Note and/or without any specific authority extended by the actual beneficiary. There is no clear statute or decision that Washington law permits MERS to serve as beneficiary. The following rulings favor the borrower over MERS: *Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 301 S.W.3d 1 (Ark. 2009); *In re Agard*, No. 810-77338-reg (E.D.N.Y.) Bankr. Feb. 10, 2011); *Hooker v. Northwest Trustee Services, Inc., Case No. 1:10-cv-03111-PA USDC for District of Oregon (Order of 5/25/2011)*; See also Christopher L. Petersen, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359 (2010).

33. <u>Injunction</u>: This is an action for injunctive relief which is brought upon proper legal and equitable grounds. Pursuant to RCW 61.24.130, injunctive relief may be based on "material violations" of the RCW 61.24 *et. seq.* and is not strictly limited

VERIFIED COMPLAINT

to "irreparable harm". Plaintiff has no remedy to redress the harm caused by the purposed Trustee's Sale because the injuring party is believed to be statutorily/civilly dead/bankrupt. Plaintiff is entitled to a temporary restraining order and a preliminary injunction until this matter is decided and likely preserved with a permanent injunction against the Defendants.

**WHEREFORE,** the Plaintiff prays for judgment to be entered jointly and severally herein against all Defendants as follows:

(a) For a permanent injunction of any further foreclosure proceedings against the subject property known as <u>510 Allison Way, Nooksack, WA 98276</u>; and,

(b) If a trustee's sale occur during the course of this litigation, for a Rescission of Trustee's Deed or payment money for actual damages in the amount of $242,200.00 plus other related costs and fees for this lawsuit as well as treble damages pursuant to RCW 19.86 and for relocation if a trustee's sale occurs during the course of this litigation;

(c) For an order expunging all related publically recorded foreclosure documents and/or having the documents stricken from the public record;

(d) For a judgment pursuant to the provisions of the Fair Debt Collection Practices Act and Fair Credit Reporting Act for each violation and for punitive damages plus per diem adjustments and possibly Private Attorney General fees as prescribed by law to be determined at trial; *Graziano v. Harrison*, 950 F.2d 107, 113 (3d. Cir. 1991), 15 U.S.C. § 1692(a)(3), (see *Zagorski v. Midwest Services, Inc.* F.3d – (1997 WL 695401, 7th Cir.) or 128 F.3d 1164 (7th Cir. 1997);

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

1    (e) For actual and statutory damages in whatever amount this Court shall find appropriate

2        to compensate the Plaintiff for the losses he has suffered;

3    (f) All statutory damages to which the Plaintiff is entitled under Fair Debt Collection

4
         Practices Act, Fair Credit Reporting Act, Washington Consumer Protection Act,
5
6        Usury Statute, TILA, RESPA, and any other applicable laws;

7    (g) Plaintiff demands a declaratory judgment as to MERS arbitrary and independent acts

8        as a nominal beneficiary under the subject Deed of Trust;

9
     (h) Plaintiff demands a temporary restraining order and preliminary injunction;
10
11   (i) For actual damages, costs and fees associated with this claim;

12   (j) For any other remedies and compensations this court deems appropriate.

13   Respectfully submitted this _4 th_ day of August, 2011,

14                              VERIFICATION

15   I, the under signed Plaintiff, do affirm the foregoing Verified Complaint, the allegations
     therein, the pleading and contents to be true, correct, complete, to the best of my
16   knowledge, information and belief.

17                              Plaintiff: Matthew L. Frase

18                              Signature: _____
                                    JURAT
19   I _Melissa D Wagner_____ a Notary Public certify that I know or
     have satisfactory evidence that _Matthew L. Frase_ appeared before me, and executed this
20   Second Amended Verified Complaint as his sworn statement as a free and voluntary act of
     his own will under penalty of perjury.
21   I certify under PENALTY OF PERJURY under the laws of the State of Washington, County
22   of _Pierce_____ that the foregoing paragraph is true and correct.
     _August 4th 2011_____
23   DATED:
     _____
24   Notary Public
25   My appointment expires _3-16-14_

26

     VERIFIED COMPLAINT                              Matthew L. Frase, **Plaintiff**
                                                          **510 Allison Way**
                                                     **Nooksack, WA 98276**
                                                         **(360) 778-1496**

     Page 12 of 13

1

# EXHIBITS ATTACHED

2

3

Exhibit A – Statutory Warranty Deed (2071000745)

4

Exhibit B – Deed of Trust (2071000747)

5

Exhibit C – Appointment of Successor Trustee (2110500789)

6

7

Exhibit D – Assignment of Deed of Trust (2110500788)

8

Exhibit E – Notice of Trustee Sale (2110500790)

9

Exhibit F – Qualified Written Request

10

11

Exhibit G – Request for Validation of Debt

12

Exhibit H-- Credit Reporting Dispute Letter

13

14

15

16

17

18

19

20

21

22

23

24

25

26

VERIFIED COMPLAINT

Matthew L. Frase, **Plaintiff**
**510 Allison Way**
**Nooksack, WA 98276**
**(360) 778-1496**

Page  13 of 13

# EXHIBIT "A" ATTACHED

# (HEREUNDER)



2071000745
Page: 1 of 3
10/04/2007  3:55 PM
DEED            $42.00
Whatcom County, WA
Request of: CHICAGO TITLE INSURANCE

After Recording Return to:
Matthew L. Frase
P.O. Box 242
Deming WA 98244

Filed for Record at Request of:
CHICAGO TITLE
INSURANCE COMPANY
P.O. Box 1115
1616 Cornwall Avenue, Suite 115
Bellingham, WA 98225

Escrow No.: 304334-ALE

## STATUTORY WARRANTY DEED

THE GRANTOR Himalaya Homes, Inc., a Washington corporation  for and in consideration of TEN DOLLARS AND OTHER VALUABLE CONSIDERATION in hand paid, conveys and warrants to Matthew L. Frase, MARRIED AS HIS SEPARATE   the following described real estate, situated in the County of Whatcom, State of Washington:   ESTATE

Lot 31, Village of Nooksack, recorded on December 28, 2005, under  Auditor's File No. 2051204867, records of Whatcom County, Washington .

Situate in Whatcom County, Washington

Subject to Exhibit A attached hereto and made a part hereof

Abbreviated Legal:  Lot 31, Village of Nooksack, a plat
Additional Legal(s) on page:
Assessor's Tax Parcel No.:400429 384243 0010

Dated: September 21, 2007

Himalaya Homes, Inc.

_mike ashton_
By Mike Ashton
Chief Operating Office r

By _____

STATE OF WASHINGTON
COUNTY OF

I certify that I know or have satisfactory evidence that  Mike Ashton (is/are) the person(s) who appeared before me, and said person(s) acknowledged that he signed this instrument, on oath stated that  he is authorized to execute the instrument and acknowledged it as the Chief Operating Officer of Himalaya Homes, Inc. to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated: 9/26/07

_J Goebel_

Notary Public in and for the State of Washington
Residing at Mansville
My appointment expires: 7/13/11

Notary Public
State of Washington
JAYME J GOEBEL
MY COMMISSION EXPIRES
July 13, 2011

313126   136892   * 10/04/2007   4383.80 *

EXHIBIT A

Easement, including its terms, covenants and provisions as granted by instrument;
Dated:                April 24, 1991
Recorded:             May 13, 1991
Recording No.:        910513092
In Favor Of:          Whatcom County
For:                  The right to enter upon the above-described land to construct,
                      maintain, clean, repair, remove and stockpile deposition material and
                      obstructions from the Sumas River stream channel and
                      appurtenances thereto.
Affects:              Portion of said premises

Covenants, Conditions, Restrictions, Easements, Notes, Dedications, Agreements and Set
Backs, if any, set forth in or delineated on *E. Madison Street Lot Line Adjustment*, recorded
under Auditor's File No. 2041004095, a copy of which is attached.

Any question that may arise due to shifting or change in the course of the Sumas River or
due to the Sumas River having shifted or changed its course.

Easement, including its terms, covenants and provisions as granted by instrument;
Dated:                April 29, 1991
Recorded:             May 13, 1991
Recording No.:        910513071
In Favor Of:          Whatcom County
For:                  The right to enter upon the above-described land to construct, repair,
                      remove and stockpile deposition material and obstructions from the
                      Sumas River stream channel and appurtenances thereto
Affects:              Portion of said premises and other property

Easement, including its terms, covenants and provisions as granted by instrument;
Dated:                June 16, 1992
Recorded:             November 10, 1992
Recording No.:        921110142
In Favor Of:          The City of Nooksack
For:                  The perpetual right and easement to lay, construct, maintain and
                      repair a water line
Affects:              Portion of said premises

The rights of the State of Washington in and to that portion of said premises, if any, lying in
the bed or former bed of the Sumas River if it is navigable.

Any prohibition or limitation on the use, occupancy or improvements of the land resulting
from the rights of the public or riparian owners to use any waters which may cover the land
or to use any portion of the land which is now or may formerly have been covered by water,
and the right of use, control or regulation by the United States of America in excise of power
over navigation.

Covenants, Conditions, Restrictions, Easements, Notes, Dedications, Agreements and Set
Backs, if any, set forth in or delineated on *Village of Nooksack*, Recorded under Auditor's
File No. 2051204867, a copy of which is attached.

Covenants, conditions, restrictions, assessments and easements, but omitting covenants or
restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status,
marital status, disability, handicap, national origin, ancestry, or source of income, as set
forth in applicable state or federal laws, except to the extent that said covenant or restriction
is permitted by applicable law;

Recorded:               December 28, 2005
Recording No.:      2051204868

Easement, including its terms, covenants and provisions as granted by instrument;
Recorded:               November 22, 2005
Recording No.:      2051103928
In Favor Of:          Puget Sound Energy, Inc.
For:                  Underground electric transmission and/or distribution system and
                       appurtenances thereto.
Affects:              Portion of said premises and other property

Covenants, conditions, restrictions, assessments and easements, in Declaration of
Restrictions;
Recorded:               June 28, 2006
Recording No.:      2060605123
Affects:              Said premises and other property

Said instrument has been amended or modified by the following instrument;
Recorded:               August 24, 2006
Recording No.:      2060804820
Affects:              Said premises and other property

# EXHIBIT "B" ATTACHED

# (HEREUNDER)



2071000747
Page: 1 of 9
10/04/2007  3:55 PM
D/T        $49.00
Whatcom County, WA
Request of: CHICAGO TITLE INSURANCE

Return To:

U.S. BANCORP MORTGAGE PROFESSIONALS, LLC
1550 AMERICAN BLVD EAST
BLOOMINGTON, MN 55425

Assessor's Parcel or Account Number: 400429-384243-0000
Abbreviated Legal Description:
LOT 31, VILLAGE OF NOOKSACK
[Include lot, block and plat or section, township and range]        Full legal description located on page    2   .

———————— [Space Above This Line For Recording Data] ————————

| | FHA Case No. |
|---|---|
| State of Washington **DEED OF TRUST** | 561-840536-8-703 |
| LOAN: 7884516168 | |

MIN    100021278845161681

THIS DEED OF TRUST ("Security Instrument") is made on   OCTOBER 3, 2007
The Grantor is
MATTHEW FRASE AND MICHELLE A FRASE , HUSBAND AND WIFE

("Borrower"). The trustee is   ROUTH CRABTREE OLSEN-JAMES MIERSMA,
3535 FACTORIA BLVD SE SUITE 200, BELLEVUE, WA 98006-1290
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
U.S. BANCORP MORTGAGE PROFESSIONALS, LLC                                         ,
("Lender") is organized and existing under the laws of   THE STATE OF DELAWARE           , and has an address of  4801 FREDERICA STREET, OWENSBORO, KY 42301
. Borrower owes Lender the principal sum of
TWO HUNDRED FORTY TWO THOUSAND TWO HUNDRED AND  NO/100
Dollars (U.S. $    242,200.00      ).

FHA Washington Deed of Trust with MERS-4/96
Wolters Kluwer Financial Services
VMP ®-4N(WA) (0305).02        Amended 2/98
Page 1 of 9           Initials: _MF_



This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2037    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in   WHATCOM                          County, Washington:

LOT 31, VILLAGE OF NOOKSACK, RECORDED ON DECEMBER 28, 2005, UNDER AUDITOR'S FILE NO. 2051204867, RECORDS OF WHATCOM COUNTY, WASHINGTON.

SITUATE IN WHATCOM COUNTY, WASHINGTON

which has the address of    510 ALLISON WAY                                        [Street]
NOOKSACK                                        [City], Washington    98276    [Zip Code]
("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:
   UNIFORM COVENANTS.
   1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly

VMP ®-4N(WA) (0305).02                          Page 2 of 9                          Initials: _____

payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially

change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

Initials: _MJ_

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

*m{*

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: _____

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by applicable law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Use of Property.** The Property is not used principally for agricultural or farming purposes.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider       ☐ Growing Equity Rider       ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

Initials: _MJ_

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        MATTHEW FRASE                    -Borrower

_____        _____ (Seal)
                                        MICHELLE A FRASE                 -Borrower

_____ (Seal) _____ (Seal)
                      -Borrower                                         -Borrower

_____ (Seal) _____ (Seal)
                      -Borrower                                         -Borrower

_____ (Seal) _____ (Seal)
                      -Borrower                                         -Borrower

Unofficial Document

STATE OF WASHINGTON County of Whatcn.                                    } ss:

On this day personally appeared before me
MATTHEW FRASE AND MICHELLE A FRASE , HUSBAND AND WIFE

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and
acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and
purpose therein mentioned.

GIVEN under my hand and official seal this **3rd** day of **October 2007**.

_Diana L Thornton_

DIANA L THORNTON
STATE OF WASHINGTON
NOTARY PUBLIC
COMMISSION EXPIRES
MARCH 28,2011

Notary Public in and for the State of Washington, residing at
Lynden

My Appointment Expires on **3-28-11** .

PREPARED BY:  ANGIE DUBEJ
U.S. BANCORP MORTGAGE PROFESSIONALS, LLC
1550 AMERICAN BOULEVARD EAST
BLOOMINGTON, MN  55425

VMP ®-4N(WA) (0305).02                        Page 9 of 9

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

2110500789
Page: 1 of 2
5/09/2011  3:15 PM
APPT          $15.00
Whatcom County, WA

Request of: BEN LEMONS

When recorded, mail to:

**ASSET FORECLOSURE SERVICES, INC.**
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367

Trustee's Sale No: WA-USB-1110235                    Loan No: 7884516168

### APPOINTMENT OF SUCCESSOR TRUSTEE

**KNOW ALL MEN BY THESE PRESENTS** that, MATTHEW FRASE AND MICHELLE A. FRASE, HUSBAND AND WIFE is the Grantor, and ROUTH CRABTREE OLSEN-JAMES MIERSMA is the Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is the Beneficiary under that certain trust deed dated 10/3/2007, under Auditor's/Recorder's No. 2071000747, records of WHATCOM County, WASHINGTON.

**NOW, THEREFORE**, in view of the premises, US BANK, NA, who is the present beneficiary, hereby appoints LSI TITLE AGENCY, INC. c/o ASSET FORECLOSURE SERVICES, INC., whose address is 5900 Canoga Avenue, Suite 220, Woodland Hills, CA 91367, as Successor Trustee under said trust deed, to have all the powers of said original trustee, effective as of the date of execution of this document.

**IN WITNESS WHEREOF**, the undersigned beneficiary has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

DATED:  4-26-11

US BANK, NA

By_____
Olivia Todd, President.
National Default Servicing Corp
POA for US Bank, NA

1                                                    WA Sub

STATE OF <u>Arizona</u>            )
                                   ) ss.
COUNTY OF <u>Maricopa</u>          )

On __4-26-11__, before me, the undersigned, a Notary Public in and for the State of <u>Arizona</u> duly commissioned and sworn, personally appeared <u>Olivia Todd</u>, to me known to be the <u>Power of Attorney</u> of <u>US Bank, NA</u>, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument.

WITNESS my hand and official seal hereto affixed the day and year first above written.

NOTARY PUBLIC in and for the State of
Arizona, residing at: Maricopa
My commission expires: __12/17/13__

TAMMY JOHNSON
NOTARY PUBLIC
MARICOPA COUNTY, ARIZONA
MY COMM. EXPIRES 12-17-13

Unofficial Document

2                                                    WA Sub

# EXHIBIT "D" ATTACHED

# (HEREUNDER)



2110500788
Page: 1 of 1
5/09/2011 3:15 PM
A/DT $14.00
Whatcom County, WA

Request of: BEN LEMONS

When recorded mail to:

**US BANK HOME MORTGAGE**
Attn: KARRIE PORTER
4801 FREDERICA STREET
OWENSBORO, KENTUCKY 42301

Trustee's Sale No: WA-USB-1110235                    Loan No 7884516168

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., by these presents, grants, bargains, sells, assigns, transfers and sets over unto US BANK, NA, all beneficial interest under that certain Deed of Trust dated 10/3/2007, and executed by MATTHEW FRASE AND MICHELLE A. FRASE, HUSBAND AND WIFE, as Grantor, to ROUTH CRABTREE OLSEN-JAMES MIERSMA, as Trustee, and recorded on 10/4/2007, under Auditor's File No. 2071000747, of WHATCOM County, State of WASHINGTON, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: March 23, 2011

                                           MORTGAGE ELECTRONIC REGISTRATION
                                           SYSTEMS, INC.

                                           BY:
                                           Lisa Rogers, Asst. Secretary for Mers, Inc.

STATE OF Arizona              )
                             ) ss.
COUNTY OF Maricopa            )

On March 23 2011, before me, Elleanal Zuccaro Notary Public, personally appeared Lisa Rogers, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal hereto affixed the day and year first above written.

                                           NOTARY PUBLIC in and for the State of
Eleanor L. Zuccaro                         Arizona, residing at: Phoenix
Notary Public - Arizona                    My commission expires: 6-16-11
MARICOPA COUNTY
My Commission Expires
JUNE 16, 2011

1                                                                    Assn

# EXHIBIT "E" ATTACHED

# (HEREUNDER)



2110500790
Page: 1 of 4
5/09/2011 3:15 PM
TR/S      $65.00
Whatcom County, WA

Request of: BEN LEMONS

When recorded, mail to:

ASSET FORECLOSURE SERVICES, INC.
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367

---

Trustee's Sale No. WA-USB-1110235                    Loan No. 7884516168

### NOTICE OF TRUSTEE'S SALE
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

I

NOTICE IS HEREBY GIVEN that the undersigned Trustee, **LSI TITLE AGENCY, INC.**, will on **August 12, 2011**, at the hour of **10:00 AM**, at **THE MAIN ENTRANCE TO THE WHATCOM COUNTY COURTHOUSE, 311 GRAND AVENUE, BELLINGHAM, WA**, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of WHATCOM, State of Washington:

> LOT 31, VILLAGE OF NOOKSACK, RECORDED ON DECEMBER 28, 2005, UNDER AUDITOR'S FILE NO. 2051204867, RECORDS OF WAHTCOM COUNTY, WASHINGTON. SITUATE IN WHATCOM COUNTY, WASHINGTON.

> Tax Parcel No: 400429-384243, commonly known as 510 ALLISON WAY , NOOKSACK, WA.

The Property is subject to that certain Deed of Trust dated 10/3/2007, recorded 10/4/2007 , under Auditor's/Recorder's No. 2071000747,  records of WHATCOM County, Washington, from MATTHEW FRASE AND MICHELLE A. FRASE, HUSBAND AND WIFE, as Grantor, to ROUTH CRABTREE OLSEN-JAMES MIERSMA, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, the beneficial interest in which is presently held by US BANK, NA.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

The default(s) for which this foreclosure is/are made are as follows:

> FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 8/1/2010, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.

1                                                    NOTS

Failure to pay when due the following amounts which are now in arrears:

| | Amount due as of May 13, 2011 |
|---|---|
| Delinquent Payments from August 01, 2010 10 payments at $ 1,953.78 each (08-01-10 through 05-13-11) | $      19,537.80 |
| Late Charges: | $          547.40 |
| TOTAL: | $      20,085.20 |

## IV

The sum owing on the obligation secured by the Deed of Trust is: Principal $232,383.64, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

## V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on August 12, 2011. The default(s) referred to in paragraph III must be cured by August 1, 2011 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before August 1, 2011, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after August 1, 2011, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

## VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

MATTHEW FRASE, 510 ALLISON WAY, NOOKSACK, WA, 98276
MICHELLE A. FRASE, 510 ALLISON WAY, NOOKSACK, WA, 98276

by both first class and certified mail on 03/22/2011, proof of which is in the possession of the Trustee; and on 3/22/2011, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

## VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the

2                                                                                     NOTS

successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid.  The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

## VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

## IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

## X

### NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants and tenants.  After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceeding under the Unlawful Detainer Act, Chapter 59.12 RCW.

Sale Information Line: 714-730-2727 or Website: http://www.lpsasap.com

DATED: May 5, 2011.

LSI TITLE AGENCY, INC., AS TRUSTEE BY ASSET FORECLOSURE SERVICES, INC., AS AGENT FOR THE TRUSTEE
13920 SE Eastgate Way, Suite 115, Bellevue, WA 98005

By _____
Lilian Solano, Trustee Sale Officer

3                                                      NOTS

STATE OF CALIFORNIA            )
                                      ) ss.
COUNTY OF LOS ANGELES       )

On May 5, 2011, before me, <u>Kelli J. Espinoza,</u> the undersigned, a Notary Public in and for the State of California, duly commissioned and sworn, personally appeared <u>Lilian Solano</u>, to me known to be the <u>Trustee Sale Officer</u> of ASSET FORECLOSURE SERVICES, INC., the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument.

WITNESS my hand and official seal hereto affixed the day and year first above written.

KELLI J. ESPINOZA
Commission # 1809926
Notary Public - California
Los Angeles County
My Comm. Expires Aug 17, 2012

NOTARY PUBLIC in and for the State of
California, residing at <u>Woodland Hills</u>
My commission expires: <u>8/17/2012</u>

NOTS

# EXHIBIT "F" ATTACHED

# (HEREUNDER)

# RESPA And TILA Request

From:
Matthew Frase
510 Allison Way
Nooksack, WA 98276

**Certified Mail RECEIPT: 70100780000058797018**
Date: 11/06/2010

To:

ROUTH CRABTREE OLSEN-JAMES MIERSMA
13555 SE 36th St, Suite 300
BELLEVUE, WA. 98006

# QUALIFIED WRITTEN REQUEST
## COMPLAINT, DISPUTE OF DEBT,
### DEMAND FOR VALIDATION OF DEBT AND TILA REQUEST

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 (e). This demand is for the complete accounting detail of account number # 7884516168

(hereinafter the subject loan and is the reference for all question and requests described below).

Dear Sir or Madam:

I are writing to you to complain about the accounting and servicing of this mortgage account number # 7884516168 our need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analysis and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent and the conversations with your service representatives have been unproductive and have not answered our questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left us feeling that there is something you are trying to hide. I am concerned that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I are currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original or certified security

regarding account # 7884516168.

In the event you do not supply us with the security instrument, it will be a positive confirmation on your part that you never really created and owned one.

I hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to us as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I are referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally: Increased the amounts of monthly payments; Increased the principal balance I owe: Increased the escrow payments; Increased the amounts applied and attributed toward interest on this account; Decreased the proper amounts applied and attributed toward the principal on this account; and/or Assessed, charged and/or collected fees, expenses and miscellaneous charges I are not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 7884516168 mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

**Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my question provided in this letter within sixty (60) days of its receipt.**

In order to conduct the examination and audit of this loan provide full and immediate disclosure

including copies of all pertinent information regarding this loan.

The documents requested and answers to the questions are needed to ensure that this loan:

1-Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws.

2-That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest.

3-That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4-That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure, of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5-That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6-That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates o asset backed securities and any subsequent transfer thereof;

7-That this mortgage account has been credited, debited, and adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset back securities and any subsequent transfer thereof;

8-That interest and principal have been properly calculated and applied to this loan;

9-That any principal balance has been properly calculated, amortized and accounted for;

10-That has no charges, fees or expenses, not obligated in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account needed are copies of pertinent documents to be provided.

Also needed are answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a copy of all information in each field or record in each computer system, program or database used that contains any information on this account.

As such, please send to the address above, copies of the documents requested below as soon as possible.

Please also provide copies, front and back, of the following documents regarding account # 7884516168.

1-Any certificated or non-certificated security used for the funding of this account;

2-Any and all "Pool Agreement(s)" or "servicing agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter "GSE or other party";

3-Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4-Any and all "Servicing Agreement(s)" between nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5-Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6-Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7-Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8-Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9-Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10-Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11-Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12-Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13-Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

**Please also send copies, front and back, of:**

1-Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any Note in this matter;

2-Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of trust and Note;

3-Any and all documents(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust and any Note; including any and all assignments or transfers of nominees of any substitute trustee(s);

4-Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

5-Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

6-Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

7-Any documentation evidencing the Mortgage/Deed Trust is not a constructive trust or any other form of trust;

8-All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to All-tel or Fidelity CPI system, or any other similar mortgage servicing software used, any servicer, or subsystem servicer(s) of this mortgage account from the inception of this account to the date written above.

9-All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10-All assignments, transfers, alonges, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other documents that secures payment to this obligation in this account from their inception of this account to the present date

including any such assignments on MERS.

11-All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12-All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13-The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer(s) of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14-All escrow analysis conducted on this account from the inception of this account until the date of this letter.

15-The front and back of each and every canceled check, draft, or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspections fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16-Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others on this account.

17-All letters, statements and documents sent by your company.

18-All letters, statements and documents sent to agents, attorneys or representatives of your company.

19-All letters, statements and documents sent by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22-All copies of property inspection reports, appraisals, BPOs and reports done on this property.

23-All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24-All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inspection of this account to the present date.

25-All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26-All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27-All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due. The following answers to question concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1-Please identify each account accounting and servicing system used by you and any subservicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2-For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3-For each accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system to adequately audit this account.

**In regards to Debits and Credits:**

1-In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2-In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3-For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4-For each transaction code, provide the master transaction code list used by you or previous servicer(s).

**In regards to Mortgage and Assignments:**

1-Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument executed to secure this debt been recorded in the county property records in the count and state in which the property is located from the inception of this account to the present date? Yes or No?

2-If not, why?

3-Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4-Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the date? Yes or No?

5-If yes, please detail the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument executed securing the obligation on this account that was not recorded in the county records where the property is located whether they be mortgage servicing right or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the question below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1-Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2-If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3-Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4-If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5-Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6-If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7-Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of attorney fees.

9-Please detail and list in the writing each separate attorney fee assessed form this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10-Please detail and list in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11-Please detail and list in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12-Please detail and list in writing any adjustments in attorney fees collected and on what date such adjustment was made the reason for such adjustment.

13-has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14-Is interest allowed to be assessed or charged on attorney fees charged or to this account? Yes or No?

15-How much total in attorney fees have been assessed to this account from the inception to the date?

16-How much total in attorney fees have been collected from this account from the inception to the present date?

17-How much total in attorney fees have been charged to this account from the inception to the present date?

18-Please send copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For this section, please treat the term suspense account and unapplied account as one in the same.

1-Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2-If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-In a spreadsheet or in letter form in a columnar format, please detail for me each and every

suspense or applied transaction, both debits and credit that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1-Have you reported the collection of late fees on this account as interest in any statement or to the IRS? Yes or No?

2-Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to the IRS? Yes or No?

3-Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4-Are late fees considered interest? Yes or No?

5-Please detail in writing what expenses and damages incurred for any payment made that was late.

6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7-If yes, please describe what expenses or damages were charged or assessed to this account.

8-Please describe in writing what expenses you or others undertook due to any payment which was late.

9-Please describe in writing what damages you or others undertook due to any payment which was late.

10-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment or collection of late fees.

11-Please detail and list in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12-Please detail and list in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13-Please detail and list in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14-Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15-Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16-Have any late charges been assessed to this account? Yes or No?

17-If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18-Please provide the exact months or payment dates you or other previous servicers or sub-servicers of this account claim to have late payments from the inception of this account to the present date.

19-Have late charges been collected on this account from the inception to the present date? Yes or No?

20-If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1-Have any property inspections been conducted on the property from the inception of this account to the present date? Yes or No?

2-If your answer is no, you can skip the rest of the question in this section concerning property inspections

3-If yes, please tell the date of each property inspection conducted on the property that is the secured interest for this mortgage, deed of trust or note.

4-Please tell the price charged for each property inspection.

5-Please tell the date of each property inspection.

6-Please tell the name and address of each company and person who conducted each property inspection on the property.

7-Please tell why the property inspections were conducted on the property.

8-Please tell how property inspections are beneficial.

9-Please tell how property inspections are protective of the property.

10-Please explain your policy on property inspections.

11-Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12-If yes, why?

13-Do you use property inspections to collect debts? Yes or No?

14-Have you used any portion of the property inspection process on the property to collect debt? Yes or No?

15-If yes, please answer when and why?

16-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment or collection of property inspection fees.

17-Have you labeled in any record or document sent a property inspection as a miscellaneous advance? Yes or No?

18-If yes, why?

19-Have you labeled in any record or document sent a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21-Please detail and list in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22-Please detail and list in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23-Please detail and list in writing any adjustments in inspection fees assessed on what date such adjustment was made and the reasons for such adjustment?

24-Please detail and list in writing any adjustments in inspection fees collected an on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26-If yes, when and how much was charged?

27-Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28-How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29-How much total in inspection fees has been collected on this account from the inception of this

account to the present date?

30-Please forward copies of all property inspections made on the property in this mortgage account file.

31-Have any fees charged or for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1-Have any BPOs (Broker Price Opinions) been conducted on the property? Yes or No?

2-If your answer is no, you can skip the rest of the questions of this section concerning BPOs.

3-If yes, please provide the date of each BPO conducted on the property that is the secured interest for this mortgage, deed of trust or note.

4-Please provide the price of each BPO.

5-Please tell who conducted the BPO.

6-Please tell why the BPOs were conducted on the property.

7-Please tell how BPOs are beneficial.

8-Please tell how BPOs are protective of the property.

9-Please explain your policy on BPOs.

10-Have any BPO fees been assessed to this account? Yes or No?

11-If yes, how much in total BPO fees have been charged to this account?

12-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of a BPO fee.

13-Please send copies of all BPO reports that have been done on the property.

14-Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1-Have you placed or ordered any force-placed insurance policies on the property?

2-If yes, please provide the date of each policy ordered or placed on the property that is the secure interest for this mortgage, deed of trust or note.

3-Please provide the price of each policy.

4-Please provide the agent for each policy.

5-Please explain why each policy was placed on the property.

6-Please explain how the policies are beneficial.

7-Please explain how the policies are protective to my property.

8-Please explain your policy on force-placed insurance.

9-Have you force-placed insurance fees been assessed to this account? Yes or No?

10-If yes, how much in total force-placed insurance fees have been assessed to this account?

11-Have any force-placed insurance fees been charged to this account? Yes or No?

12-If yes, how much in total force-placed insurance fees have been charged to this account?

13-Please identify me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of force-placed insurance fees.

14-Do you have any relationship with the agent or agency that placed any policies on the property? If yes, please describe.

15-Do you have any relationship with the carrier that issued any policies on the property? If yes, please describe.

16-Has the agency or carrier you used to place a forced-placed insurance on the property provide you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe?

17-Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18-Please send copies of all forced-placed insurance policies that have been ordered on the property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question. In addition, needed the following answers to question concerning the servicing of this account from its inception to the present date.

1-Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2-Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of

your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

3-Please identify where the originals of this entire account file are currently located and how they are being stored, kept and protected.

4-Where is the original monetary instrument or mortgage signed located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

5-Where is the original deed of trust or mortgage and note signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6-Since the inception of this account, has there been any assignment of the monetary instrument/asset to any other party? If the answer is yes, identify the name and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

7-Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each individual, party, bank, trust or entity that has received such assignments.

8-Since the inception of this account, has there been any sale or assignment of the servicing right to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

9-Since the inception of this account, have an sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

10-Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify each and every account mortgage pool that this mortgage has been part of from the inception of this account to the present date.

11-Has each and every assignment of the asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

12-Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or services that have been assigned to mortgage servicing rights to this account s well as the beneficial interest to the payments of principal and interest of this loan.

13-Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

14-Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

15-Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16-How much was paid for this individual mortgage account?

17-If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

18-If part of mortgage pool, what was the percentage paid of the principal balance above used to determine purchase of this individual mortgage loan?

19-Who was issued the check or payment to for this mortgage loan?

20-Please provide copies of the front and back of the canceled check.

21-Provide any and all due diligence reports by a separate due diligence firm in regards to any pooling agreements that have been generated.

Please provide the documents requested and a detailed answer to each question within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates, and my congressman.

The hope is that you answer this RESPA request in accordance with law and the questions, documents, and validation of debt to the penny and correct abuses or schemes uncovered and documented.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

Alleged Lender or any agents, transfers, or assigns omission of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by an violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Clients/Homeowners or any property or collateral connected to the same Clients/Homeowners or account # 7884516168 waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1. Clients/Homeowners rights, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment

ALLEGED/LENDER may have or may have had in connection with account # 7884516168 and any property and/or real estate connected with account # 7884516168 right to have any certificated or uncertificated security re-registered in Clients/Homeowners, and only Clients/Homeowners names.

2.  Clients/Homeowners right of collection via ALLEGED/LENDER liability insurance and/or bond.

3.  Clients/Homeowners entitlement in filing and executing any instruments as power of attorney for and by ALLEGED/LENDER, including but not limited by a new certified security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of Washington.

4.  Clients/Homeowners right to damages because of ALLEGED/LENDER USA's wrongful registration, breach of intermediary responsibility with regard to Clients/Homeowners asset by ALLEGED/LENDER issuing to Clients/Homeowners a certified check for the original value of Client/Homeowner monetary instrument.

5.  Client/Homeowner have the right to have account # 7884516168 completely set off because ALLEGED/LENDER wrongful failure to registration, breach of intermediary responsibility with regard to Client/Homeowner monetary instrument/asset by ALLEGED/LENDER USA sending confirmation of set off of wrongful liability of Client/Homeowner mistakenly sent to ALLEGED/LENDER USA as a payment for such wrongful liability.

ALLEGED/LENDER USA or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of an in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for ALLEGED/LENDER USA in accordance with ALLEGED/LENDER USA's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within the lawful time-line. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as ALLEGED/LENDER USA's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law. Power of Attorney: When ALLEGED/LENDER USA fails by not rebutting to any part of this RESPA REQUEST ALLEGED/LENDER USA agrees with the granting unto Client/Homeowner unlimited Power of Attorney and any and all full authorization in signing and endorsing ALLEGED/LENDER name upon any instruments in satisfaction of the obligations of the RESPA REQUEST/Agreement of any agreement arising from this agreement. Preemption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by ALLEGED/LENDER waives any and all claims of ALLEGED/LENDER and/or defenses and remains in effect until the satisfaction of all obligations by ALLEGED/LENDER have been satisfied.

**RESPA And TILA Request**
**Signatures and Verification**

_Matthew Frase_ (signature)

**Matthew Frase**

# VERIFICATION

Executed on ___11/9/10___

STATE OF ___Washington___

COUNTY OF ___King___

I ___DJ Wilson___ a Notary Public certify that I know or have satisfactory evidence that Matthew Frase appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

___11/9/10___
DATED:

___DJ Wilson___ (signature)
Notary Public

My appointment expires ___7/10/12___

SEAL

(Notary seal: DJ WILSON, COMMISSION EXPIRES, NOTARY PUBLIC, JULY 10, 2012, STATE OF WASHINGTON)



**UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm      FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7010 0780 0000 5879 7018
Expected Delivery Date: November 22, 2010
Class: Priority Mail®
Service(s): Certified Mail™
      Return Receipt
Status: Delivered

Your item was delivered at 9:43 am on November 23, 2010 in OWENSBORO, KY 42301.

Detailed Results:

- **Delivered, November 23, 2010, 9:43 am, OWENSBORO, KY 42301**
- **Arrival at Unit, November 23, 2010, 5:43 am, OWENSBORO, KY 42301**
- **Acceptance, November 19, 2010, 10:52 am, LAKEWOOD, WA 98499**

**Track & Confirm**

Enter Label/Receipt Number.

Go >

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go >

Copyright© 2010 USPS. All Rights Reserved.      No FEAR Act EEO Data      FOIA



ups.//uackunnt.smi.usps.com/PTSInternetWeb/InterLabelInquiry.c



**UNITED STATES POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7010 0780 0000 5879 7049
Expected Delivery Date: **November 20, 2010**
Class: **Priority Mail**®
Service(s): **Certified Mail**™
                    **Return Receipt**
Status: **Delivered**

Your item was delivered at 11:35 am on November 22, 2010 in
BELLEVUE, WA 98006.

Detailed Results:

- **Delivered, November 22, 2010, 11:35 am, BELLEVUE, WA 98006**
- **Notice Left, November 20, 2010, 9:36 am, BELLEVUE, WA 98006**
- **Arrival at Unit, November 20, 2010, 6:12 am, BELLEVUE, WA 98009**
- **Acceptance, November 19, 2010, 10:53 am, LAKEWOOD, WA 98499**

| Track & Confirm |
| --- |
| Enter Label/Receipt Number. |
| ( Go > ) |

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   ( Go > )

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
| --- | --- | --- |
| Postage | $ | $4.90 |
| Certified Fee | | $2.80 |
| Return Receipt Fee (Endorsement Required) | | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $10.00 |

Sent To  ROHM CRABTREE OLSEN - JAMES MIRGA
Street, Apt. No.; or PO Box No.  13555 SE 36th St, SUITE 300
City, State, ZIP+4  BELLEVUE, WA  98006

PS Form 3800, August 2006          See Reverse for Instructions

7010 0780 0000 5879 7049

---

SECTION ON DELIVERY

☐ Agent
☐ Addressee

Printed Name)   __rnberg    Date of Delivery  11/22/10

...ss different from item 4?  ☐ Yes
...livery address below:  ☐ No

☐ Express Mail
☐ Return Receipt for Merchandise
☐ C.O.D.

? (Extra Fee)   ☐ Yes

Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

1 of 1

12/8/2010 1:57 PM

## 3rd Request
## Qualified Written Request Under RESPA

August 2nd, 2011

*Via Certified Mail, Return Receipt Requested*

From:   MATTHEW FRASE
      510 ALLISON WAY
      NOOKSACK, WA 98276

TO:   U.S. Bank, N.A.
      P.O. Box 20005
      Owensboro, KY  42304-0005

RE:   MATTHEW FRASE
      Loan with U.S. Bank, N.A.
      Property Address:  510 Allison Way, Nooksack, WA 98276

Attn: Executive Office

Dear Executive Officer, *et al*:

This letter is being sent to you as I dispute the above-referenced debt. In particular, I dispute:

    1)  that the original Promissory Note and Mortgage Instrument exists or is in your hands;
    2) that the Promissory Note and Mortgage Instrument are enforceable by U.S. Bank, N.A.; and,
    3)  the amount owed according to the Monthly Billing Statement.

This is both a "QUALIFIED WRITTEN REQUEST" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)) and a demand to have you validate this debt pursuant to the Federal Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.*

Specifically, I am requesting an itemization of the following:

1.   A complete listing of all persons or entities that have held an ownership interest in the Promissory Note since the date it was executed;

2.   A complete listing of all persons or entities that have held an ownership interest in the Mortgage instrument since the date it was executed;

3.  A copy of the Pooling and Service Agreement that this mortgage loan is subject to;

4.  A detailed break-down of all payments made by all sources to the subject Pooling and Service Agreement;

5.   A copy of all assignments, ALLONGE and endorsements made to the    Promissory Note and to the Mortgage Instrument;

6.  A CERTIFIED copy of the original Promissory Note, front and back;

7.  A CERTIFIED copy of the original Mortgage Instrument, front and back;

8.  A complete payment history, including but not limited to the dates and amounts of all the payments made on the mortgage loan to date, documented from the original creditor;

9.  Produce the FR 2046, balance sheet which has OMB number on it which is subject to disclosure under the privacy act, Title 5 U.S.C. 552(b)(4).

10.  Produce the FASB Form #4  changes in beneficial ownership of securities, #95 (credit to transactional account), #125 (securitization accounting), #133 (derivatives on hedge accounts) and #140 (Offsetting of financial assets and liabilities) which have OMB numbers on them and are subject to disclosure under the privacy act.

11.  A complete payment break-down, showing exactly to whom payments went to and the dates paid;

12.  A breakdown of the amount claimed in-arrears or delinquencies, including an itemization of all fees charged to this account;

13.  An explanation of how the amount due on the Monthly Billing Statement was calculated;

14.  The payment dates, purpose of payment and recipient of any and all default and any and all foreclosure fees and costs that have been charged to this account;

15.  The payment dates, purpose of payment and recipient of all escrow items charged to this account;

16.  A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

17.  A copy of any annual escrow statements, notices of a shortage, deficiency or surplus, sent to Borrower within the last three (3) years; and

18.  A copy of the Title Page of the Mortgage.

It is not now, nor has it ever been, my intention to avoid paying any obligation that is lawfully owed. If your office fails to respond to this validation and proof of claim request within 31 days from the date of your receipt, all references to this account must be deleted and completely removed from all credit files and a copy of such deletion shall be sent to undersigned immediately.

RESPA request is expected within sixty one (61) days after receipt, before dishonor.

With best regards;

**All Rights Reserved, Without Prejudice,**

*Failure to respond within sixty one (61) days from the date of service, the presumption will hold by tacit admission U.S. Bank, N.A., et al., is not in possession of the Security Instruments showing the once wet ink signature of MATTHEW FRASE; tacitly admitting U.S. Bank, N.A. is not the true Party-in-Interest, lack the capacity to present Notice of Acceleration.*

Date:  August __2__ , 2011

_____
MATTHEW FRASE

cc:      ASSET FORECLOSURE SERVICES, INC.        LSI TITLE AGENCY, INC.
         5900 CANOGA AVENUE, SUITE 220           13920 SE EASTGATE WAY, SUITE 115
         WOODLAND HILLS, CA 91367                BELLEVUE, WA 98005
         Trustee Sale #WA-USB-1110235            Trustee Sale #WA-USB-1110235

## JURAT

I _Melissa D. Wagner_ a Notary Public certify that I know or have satisfactory evidence that MATTHEW FRASE appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of _Pierce_ that the foregoing paragraph is true and correct.

_August 2nd 2011_
DATED:

_____
Notary Public

My appointment expires: __3-16-14__

SEAL — MELISSA D. WAGNER, NOTARY PUBLIC, STATE OF WASHINGTON, COMMISSION EXPIRES 3-16-14

## DECLARATION OF MAILING

I, _Linda L Stephensen_____, at the request of: **MATTHEW FRASE**, personally mailed by certified mail no. ___See below_____:

To:   U.S. Bank, N.A.                           7011 1570 0002 2607 6151
      P.O. Box 20005                           _____
      Owensboro, KY 42304-0005

To:   ASSET FORECLOSURE SERVICES, INC.         7011 1570 0002 2607 1842
      5900 CANOGA AVENUE, SUITE 220            _____
      WOODLAND HILLS, CA 91367

To:   LSI TITLE AGENCY, INC.                   7011 1570 0002 2607 1859
      AS AGENT FOR ASSET FORECLOSURE SERVICES, INC. _____
      13920 SE EASTGATE WAY, SUITE 115
      BELLEVUE, WA 98005

on **August** _2nd_, 2011.

Signature: _____

### JURAT

I _Melissa D Wagner_ a Notary Public certify that I know or have satisfactory evidence that _Linda L Stephensen_ appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of _Pierce_____ that the foregoing paragraph is true and correct.

DATED: _August 2nd 2011_

_____
Notary Public

My appointment expires: _3-16-14_

 **USPS.COM**

Search USPS.com or Track Packages

Quick Tools          Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

# Track & Confirm

GET EMAIL UPDATES     PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70111570000226076151 | First-Class Mail® | Acceptance | August 02, 2011, 5:25 pm | LAKEWOOD, WA 98499 | **Expected Delivery By:** August 6, 2011 Certified Mail™ |

### Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2011 USPS. All Rights Reserved.

Customer Service     USPS Mobile                                                    Register / Sign In

 **USPS.COM**®                                    Search USPS.com or Track Packages

Quick Tools            Ship a Package      Send Mail       Manage Your Mail       Shop        Business Solutions

# Track & Confirm

GET EMAIL UPDATES      PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70111570000226071842 | First-Class Mail® | Processed through Sort Facility | August 04, 2011, 7:50 pm | SANTA CLARITA, CA 91383 | **Expected Delivery By:** August 6, 2011 Certified Mail™ |
| | | Acceptance | August 02, 2011, 5:26 pm | LAKEWOOD, WA 98499 | |

## Check on Another Item

What's your label (or receipt) number?

                                        Find

---

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2011 USPS. All Rights Reserved.

 **USPS.COM**

Search USPS.com or Track Packages

Quick Tools          Ship a Package      Send Mail      Manage Your Mail      Shop      Business Solutions

# Track & Confirm

GET EMAIL UPDATES      PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 7011 1570 0002 2607 1859 | First-Class Mail® | Delivered | August 03, 2011, 10:31 am | BELLEVUE, WA 98005 | **Expected Delivery By:** August 4, 2011 Certified Mail™ |
| | | Arrival at Unit | August 03, 2011, 6:24 am | BELLEVUE, WA 98005 | |
| | | Processed through Sort Facility | August 03, 2011, 3:12 am | REDMOND, WA 98052 | |
| | | Acceptance | August 02, 2011, 5:25 pm | LAKEWOOD, WA 98499 | |

## Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2011 USPS  All Rights Reserved.

# EXHIBIT "G" ATTACHED

# (HEREUNDER)

From:   MATTHEW FRASE
         510 ALLISON WAY
         NOOKSACK, WA 98276

CERTIFIED MAIL # 7011 0470 0003 4062 1491

To:     ASSET FORECLOSURE SERVICES, INC.
         5900 CANOGA AVENUE, SUITE 220
         WOODLAND HILLS, CA 91367

April 7th, 2011

Re:     Your **NOTICE OF DEFAULT** dated 22nd March, 2011 (attached)
         Property Address:       510 Allison Way, Nooksack, WA  98276
         Loan No. 7884516168

To Whom It May Concern at ASSET FORECLOSURE SERVICES, INC.,

This letter is being sent to you in response to a letter received from you indicating I owe you some money, received by me on the 23rd March, 2011. Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I would like to resolve this matter at the earliest possible time, however due to the possibility of error or fraud in this matter, I must insist that you prove that I owe you this purported debt and why. In order to prove the debt, I must have a signed and sworn statement before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness and stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws, was not subsequently disputed as a result of returned, faulty, or recalled consumer products, and furthermore swearing that this purported debt is not now nor ever has been part of any tax write off scheme nor insurance claim. Please be advised that I am requesting validation and competent evidence that I had some contractual obligation sans consumer protection encumbrance whereby I incurred the original claims associated with this purported debt.

**Please provide me with the following:**
1. What is the money you say I owe for;
2. Explain and show me how you calculated what you say I owe;
3. Provide me with copies of any papers that show I agreed to pay you what you say I owe;
4. Provide a verification or copy of any judgment if applicable;
5. Identify the original creditor;
6. Prove the Statute of Limitations has not expired on this account;
7. Show me that you are licensed to collect in my state;
8. Provide me with your license numbers and Registered Agent;
9. Provide me with a signed agreement from the debtor confirming to pay the debt;
10. Provide me with the agreement which authorizes you to collect debt on the assumed debt.
11. Provide me with a complete payment history, the requirement of which has been established via Spears v. Brennan 745 N.E.2d: 2001 Ind. App. LEXIS 509 and
12. Provide the agreement that bears the signature of the alleged debtor wherein he agreed to pay the original creditor.
13. Provide the letter of sale or assignment from the original creditor to your company. (Agreement with your client that grants you the authority to collect on this alleged debt.) Coppola v. Arrow Financial Services, 302cv577, 2002 WL 32173704 (D.Conn.)

Page 1 of 3

4.21.11 mailed

Pursuant to the Fair Debt Collection Practices Act (FDCPA), I am also requesting, in writing that no telephone contact be made by your offices to my home, to my place of employment or any other person(s) regarding such debt. Any attempts by your office and/or your client for telephone communications with me, including but not limited to computer generated calls, any electronic device type of contact, and calls or correspondence sent to or with any third parties, it will be considered harassment under the FDCPA. Let it be known that all future communications with me MUST be done so in writing and sent to the address noted in this letter by USPS. Any other type of communication received other than in writing will be recorded (Ariz. Rev. Stat. Ann. § 13-3005) and used for legal purposes pursuant to FDCPA and standards.

This is an attempt to correct your records and/or your client's records as well as to inform you and/or your client of my intent under the FDCPA, Ariz. Rev. Stat. Ann. §§ 32-1001 to 1057, any information obtained shall be used for that purpose.

Please be advised that any contact made by your firm with any 3rd party firm or entity regarding this issue absent compliance with each and every part of this demand for validation may constitute violation of the FDCPA and the FCRA and may constitute grounds for civil or criminal action or complaints being filed against you. I do hope that you can understand and that we can settle this matter in an amicable fashion at the earliest possible moment.

Best Regards,

_MATTHEW FRASE_

_4/20/11_ DATE

## JURAT

I ____DJ Wilson____ a Notary Public certify that I know or have satisfactory evidence that **MATTHEW FRASE** appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of ____King____ that the foregoing paragraph is true and correct.

DATED: ____4/20/11____

_____  **SEAL**
Notary Public
My appointment expires: ____7/10/12____

DJ WILSON
COMMISSION EXPIRES
NOTARY
PUBLIC
JULY 10, 2012
STATE OF WASHINGTON

---

I, ____Amy Reyes____, at the request of Plaintiff: **MATTHEW FRASE**, personally mailed by certified mail no. 7011 0470 0003 4062 1491.

NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT 12 U.S.C. SECTION 1692 & NOTICE OF DEFAULT DATED 2/28/2011

To: ASSET FORECLOSURE SERVICES, INC.
5900 CANOGA AVENUE, SUITE 220
WOODLAND HILLS, CA 91367

on April _21_, 2011.

Signature: _Juull h/w_

**JURAT**

I _DJWilson_____ a Notary Public certify that I know or have satisfactory evidence that
_Amy Reyes_____ appeared before me, and signed this instrument and acknowledged it
to be free and voluntary act for the uses and purposes mentioned in the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of
_King_____ that the foregoing paragraph is true and correct.

_4/21/11_
DATED: _DJWilson_____                *SEAL*

Notary Public
My appointment expires: _7/10/12_____

Page **3** of **3**

## NOTICE OF DEFAULT
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

Trustee Sale No.: WA-USB-1110235

|||||||||||| (barcode) ||||||||||||

1.    DEFAULT

**YOU ARE HEREBY NOTIFIED** that the Beneficiary has declared you, the borrower or grantor, in default on the obligations secured by a Deed of Trust recorded under Auditor's/Recorder's No. 2071000747,   records of WHATCOM County, Washington; originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as beneficiary.  The beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by or will be assigned to US BANK, NA. Said Deed of Trust encumbers the following described real property in WHATCOM County:

> LOT 31, VILLAGE OF NOOKSACK, RECORDED ON DECEMBER 28, 2005, UNDER AUDITOR'S FILE NO. 2054204867. RECORDS OF WHATCOM COUNTY, WASHINGTON. SITUATE IN WHATCOM COUNTY, WASHINGTON.

The postal address of the Property is purported to be: 510 ALLISON WAY, NOOKSACK, WA 98276.

You should take care to protect your interest in your home.  This notice of default (your failure to pay) is the first step in a process that could result in your losing your home.  You should carefully review your options.  For example:

> Can you pay and stop the foreclosure process?
> Do you dispute the failure to pay?
> Can you sell your property to preserve your equity?
> Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?
> Do you qualify for any government or private homeowner assistance programs?
> Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?

Do not ignore this notice, because if you do nothing, you could lose your home at a foreclosure sale.  (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.)  Also, if you do nothing to pay what you owe, be careful of people who claim they can help you.  There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrower's distress.

You may feel you need help understanding what to do.  There are a number of professional resources available, including home loan counselors and attorneys, who may assist you.  Many legal services are lower-cost or even free, depending on your ability to pay.  If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located.  These legal referral services also provide information about lower-cost or free legal services for those who qualify.  You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.

WA NOD

2.      STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:

The beneficiary alleges that you are in default for failure to pay the following past due amounts, which are in arrears:

```
                                              Amount due as of
                                              March 22, 2011
                                              -------------------

         Delinquent Payments from August 01, 2010
         8 payments at $ 1,953.78 each        $      15,630.24
            (08-01-10 through 03-22-11)
         Late Charges:                        $         547.40
                                              ===================

         TOTAL:                               $      16,177.64
```

If you have failed to pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust, the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. These requirements for reinstatement should be confirmed by contacting the undersigned Trustee.

3.      OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you, the borrower, grantor, or any guarantor, are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale.

```
         Trustee Fee                          $         725.00
         Airbill                              $          15.00
         Bankruptcy Check                     $         125.00
         Certified Mailing Cost               $          13.20
         Posting Cost                         $         120.00
         Recording Cost                       $          30.00
         TSG Guarantee Policy                 $         864.00
                                              ===================

         TOTAL CHARGES, COSTS AND FEES:       $       1,892.20
```

4.      REINSTATEMENT:      IMPORTANT! PLEASE READ!

THE ESTIMATED AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS THE SUM OF PARAGRAPHS 2 AND 3 ABOVE IN THE AMOUNT OF 18069.84, PLUS the amount of any monthly payments and late charges which may fall due after the date of this Notice of Default. However, because some of the items can only be estimated at this time and because the amount needed to reinstate your loan may include presently unknown expenditures required to preserve the property or to comply with state or local laws, it will be necessary for you to contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.

- 2 -

WA NOD

Reinstatement monies may be tendered to (CERTIFIED OR CASHIER'S CHECK REQUIRED)

ASSET FORECLOSURE SERVICES, INC.
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367

If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

5.       CONSEQUENCES OF DEFAULT:

a.       Failure to cure the alleged default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the Property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future.

b.       The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property described herein for sale.

c.       If the default(s) described above is (are) not cured within thirty days of the mailing of this notice, the lender hereby gives notice that the entire principal balance owing on the note secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest, as well as costs of foreclosure, shall immediately become due and payable. Notwithstanding acceleration, the grantor or the holder of any junior lien or encumbrance shall have the right after acceleration to reinstate by curing all defaults and paying all costs, fees and advances, if any, made pursuant to the terms of the obligation and/or deed of trust on or before 11 days prior to a Trustee's sale.

d.       The effect of a Trustee's Sale of the grantor's Property by the trustee will be to deprive the grantor of all of their interest in the Property described in paragraph 1 above.

6.       RECOURSE TO COURTS:

The borrower, grantor and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

DATED: 3/22/2011

ASSET FORECLOSURE SERVICES, INC.
As Agent for the Trustee and/or Agent for the Beneficiary

By _____
5900 Canoga Avenue, Suite 220, Woodland Hills, CA 91367
Telephone: (877)237-7878

- 3 -

WA NOD

**FORECLOSURE LOSS MITIGATION FORM**

**NOTICE OF DEFAULT DECLARATION**
**FOR NOD'S ISSUED AFTER 7-26-09 ON LOANS MADE 1-1-03 TO 12-31-07 ON**
**OWNER OCCUPIED RESIDENTIAL PROPERTY**

**BENEFICIARY DECLARATION OF COMPLIANCE WITH (OR EXCEPTION FROM)**
**RCW 61.24 (SECTION 2) AND AUTHORIZATION OF AGENT (FOR NOTICE OF**
**DEFAULT)**

_____Commercial or___x___Residential          Owner Occupied – Yes___x___No_____
_____Vacant (Raw Land)

Loan Number: 7884516168
Property Address: 510 Allison Way, Nooksack, WA 98276
Borrower: Frase

Please select applicable option(s) below:

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that:

1. [x] The beneficiary or beneficiary's authorized agent has contacted the borrower under, and complied with, section 2 of this act (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure")

2. [ ] The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower (s) as required in section 2 (5) of this act and, after waiting fourteen days after the requirements in Section 2 of this act were satisfied, the beneficiary of the beneficiary's authorized agent sent to the borrower (s), by certified mail, return receipt requested, the letter required under section 2 of this act.

3. [ ] The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.

4. [ ] Under section 2 of this act, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower (s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust.

5. [ ] This loan is exempt. You are instructed that compliance with RCW 61.24 Section 2 is not necessary to proceed with the issuing of the notice of default.

Current Beneficiary:_ US Bank, NA

Address: 4801 Frederica Street, Owensboro, KY 42301

The undersigned authorizes the trustee, the foreclosing agent and/or their authorized agent to sign on behalf of the beneficiary, the notice of default containing the declaration required pursuant to 61.24.030 (8)

I declare under penalty of perjury under the laws of the State of Arizona, that the foregoing is true and correct, and that this declaration was executed this _3 / ²ᵗ_____
day of _January_____, 2010 at Phoenix. Arizona.
                              _2011_

Dated: _12 · 17 · 13_____               _____

                                          Olivia Todd, President
                                          National Default Servicing Corp.
                                          POA for US BANK, N.A.

**Declaration of the Beneficiary as to the actual holder of the Promissory Note**

The undersigned beneficiary declares that they are the owner and actual holder and has possession of the promissory note or other obligation secured buy the Deed of Trust:

Loan#: 7884516168

Dated: 10/3/2007

Recorded: 10/4/2007 Instrument No 207100747

Property Address: 510 Allison Way, Nooksack, WA 98276


Current Beneficiary:


I declare under penalty of perjury under the laws of the State of _____ Ky _____
That the foregoing is true and correct, and that this declaration was executed
this 24 day of FEB 2010 at Owensboro , Ky

Dated: _2/24/y_____

By: _Heather Patton_____

# SOLDIERS' AND SAILORS' RELIEF ACT NOTIFICATION

If you are on active duty in the armed services, or the dependent of a such a person, and you believe that you are entitled to protections afforded under the Soldiers' and Sailors' Relief Act, please contact the undersigned immediately.  Failure to do so may result in loss of your rights, if any, under the Act.  To facilitate follow-up to any response to this notice, please make any response in writing and describe the circumstances which you believe cause you to be entitled to protection under the Act.

If you have any questions about the applicability of the Soldiers' and Sailors' Relief Act, you should contact a lawyer immediately.  The undersigned is not a lawyer and cannot provide you legal advice.

**ASSET FORECLOSURE SERVICES, INC.**
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367
(877)237-7878 (818)591-9599

NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICE ACT
15 U.S.C. Section 1692

TS#     WA-USB-1110235

3/22/2011

ATTENTION TRUSTORS:

1.   You are hereby notified that ASSET FORECLOSURE SERVICES, INC. is attempting to collect a debt.

2.   As of the date of this letter, you owe $247,401.33.  Because of interest, late charges, and other charges that may vary from day to day, or may apply only upon payoff, the amount due on the day you pay may be greater.  Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

3.   The original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC..  The current creditor is US BANK, NA.

4.   The debt will be assumed to be valid by ASSET FORECLOSURE SERVICES, INC. unless WITHIN THIRTY DAYS AFTER THE RECEIPT OF THIS NOTICE, you dispute the validity of the debt or some portion thereof.

5.   If you notify ASSET FORECLOSURE SERVICES, INC. in writing within thirty days after the receipt of this Notice that the debt or any portion thereof is disputed, ASSET FORECLOSURE SERVICES, INC. will provide a verification of the debt, and a copy of the verification will be mailed to you by ASSET FORECLOSURE SERVICES, INC..  In attempting to collect the debt, any information obtained will be used for that purpose.

6.   If the current creditor is not the original creditor, and if you make a written request to ASSET FORECLOSURE SERVICES, INC. within thirty days after the receipt of this Notice, the name and address of the original creditor will be mailed to you by ASSET FORECLOSURE SERVICES, INC..

7.   Written request should be addressed to and further information can be obtained from:

ASSET FORECLOSURE SERVICES, INC.
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367
(877)237-7878 (818)591-9599

**UNITED STATES**
**POSTAL SERVICE** ®

Home | Help | Sign In

Track & Confirm        FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7011 0470 0003 4062 1491**
Expected Delivery Date: April 25, 2011
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 2:16 pm on April 25, 2011 in WOODLAND
HILLS, CA 91367.

Detailed Results:

- **Delivered, April 25, 2011, 2:16 pm, WOODLAND HILLS, CA 91367**
- **Arrival at Unit, April 25, 2011, 11:07 am, WOODLAND HILLS, CA 91367**
- **Processed through Sort Facility, April 25, 2011, 1:29 am, SANTA CLARITA, CA 91383**
- **Processed through Sort Facility, April 23, 2011, 7:51 pm, SANTA CLARITA, CA 91383**
- **Acceptance, April 21, 2011, 1:49 pm, LAKEWOOD, WA 98499**

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( Go > )

**Track & Confirm**

Enter Label/Receipt Number.

[ _____ ]

( Go > )

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA



From:   MATTHEW FRASE
        510 ALLISON WAY
        NOOKSACK, WA 98276

CERTIFIED MAIL # 7011 0470 0003 4063 1308

To:     LSI TITLE AGENCY, INC.
        AS AGENT FOR ASSET FORECLOSURE SERVICES, INC.
        13920 SE EASTGATE WAY, SUITE 115
        BELLEVUE, WA 98005

May 17, 2011

Re:     Your **NOTICE OF FORECLOSURE** dated 5th May, 2011 (attached)
        Property Address:   510 Allison Way, Nooksack, WA  98276
        Trustee's Sale No. WA-USB-1110235
        Loan No. 7884516168

To Whom It May Concern at LSI TITLE AGENCY, INC.:

This letter is being sent to you in response to a letter received from you indicating I owe you some money, received by me on the 16th May, 2011. Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I would like to resolve this matter at the earliest possible time, however due to the possibility of error or fraud in this matter, I must insist that you prove that I owe you this purported debt and why. In order to prove the debt, I must have a signed and sworn statement before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness and stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws, was not subsequently disputed as a result of returned, faulty, or recalled consumer products, and furthermore swearing that this purported debt is not now nor ever has been part of any tax write off scheme nor insurance claim. Please be advised that I am requesting validation and competent evidence that I had some contractual obligation sans consumer protection encumbrance whereby I incurred the original claims associated with this purported debt.

**Please provide me with the following:**
1.  What is the money you say I owe for;
2.  Explain and show me how you calculated what you say I owe;
3.  Provide me with copies of any papers that show I agreed to pay you what you say I owe;
4.  Provide a verification or copy of any judgment if applicable;
5.  Identify the original creditor;
6.  Prove the Statute of Limitations has not expired on this account;
7.  Show me that you are licensed to collect in my state;
8.  Provide me with your license numbers and Registered Agent;
9.  Provide me with a signed agreement from the debtor confirming to pay the debt;
10. Provide me with the agreement which authorizes you to collect debt on the assumed debt.
11. Provide me with a complete payment history, the requirement of which has been established via Spears v. Brennan 745 N.E.2d: 2001 Ind. App. LEXIS 509 and
12. Provide the agreement that bears the signature of the alleged debtor wherein he agreed to pay the original creditor.
13. Provide the letter of sale or assignment from the original creditor to your company. (Agreement with your

Page **1** of **3**

client that grants you the authority to collect on this alleged debt.) Coppola v. Arrow Financial Services, 302cv577, 2002 WL 32173704 (D.Conn.)

Pursuant to the Fair Debt Collection Practices Act (FDCPA), I am also requesting, in writing that no telephone contact be made by your offices to my home, to my place of employment or any other person(s) regarding such debt. Any attempts by your office and/or your client for telephone communications with me, including but not limited to computer generated calls, any electronic device type of contact, and calls or correspondence sent to or with any third parties, it will be considered harassment under the FDCPA. Let it be known that all future communications with me MUST be done so in writing and sent to the address noted in this letter by USPS. Any other type of communication received other than in writing will be recorded (Ariz. Rev. Stat. Ann. § 13-3005) and used for legal purposes pursuant to FDCPA and standards.

This is an attempt to correct your records and/or your client's records as well as to inform you and/or your client of my intent under the FDCPA, Ariz. Rev. Stat. Ann. §§ 32-1001 to 1057, any information obtained shall be used for that purpose.

Please be advised that any contact made by your firm with any 3rd party firm or entity regarding this issue absent compliance with each and every part of this demand for validation may constitute violation of the FDCPA and the FCRA and may constitute grounds for civil or criminal action or complaints being filed against you. I do hope that you can understand and that we can settle this matter in an amicable fashion at the earliest possible moment.

Best Regards,

_____
MATTHEW FRASE

_____5/17/11_____
DATE

**JURAT**

I Melissa D. Wagner a Notary Public certify that I know or have satisfactory evidence that **MATTHEW FRASE** appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of Pierce that the foregoing paragraph is true and correct.

DATED: __5/17/2011__

_____
Notary Public
My appointment expires: __3-16-14__

SEAL

## CERTIFICATE OF MAILING

I, _Linda L. Stephenson_ , at the request of Plaintiff: **MATTHEW FRASE**, personally mailed

by certified mail no. 7011 0470 0003 4063 1308 ;

NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT 12 U.S.C. SECTION 1692 & NOTICE OF FORECLOSURE DATED 5/5/2011

To:     LSI TITLE AGENCY, INC.
        AS AGENT FOR ASSET FORECLOSURE SERVICES, INC.
        13920 SE EASTGATE WAY, SUITE 115
        BELLEVUE, WA 98005

on **May** 25 , 2011.

Signature:

### JURAT

I _Melissa D. Wagner_ a Notary Public certify that I know or have satisfactory evidence that
_____ appeared before me, and signed this instrument and acknowledged it
to be free and voluntary act for the uses and purposes mentioned in the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of
_Pierce_ that the foregoing paragraph is true and correct.

5/25/2011
DATED:

SEAL

Notary Public
My appointment expires: 3-16-14

7011 0470 0003 4063 1308

Page **3** of **3**

 **UNITED STATES POSTAL SERVICE**®

Home | Help | Sign in

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7011 0470 0003 4063 1308**
Expected Delivery Date: **May 27, 2011**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 12:04 pm on May 26, 2011 in BELLEVUE, WA 98005.

Detailed Results:

- **Delivered, May 26, 2011, 12:04 pm, BELLEVUE, WA 98005**
- **Arrival at Unit, May 26, 2011, 6:53 am, BELLEVUE, WA 98005**
- **Acceptance, May 25, 2011, 5:39 pm, LAKEWOOD, WA 98499**

**Track & Confirm**

Enter Label/Receipt Number.

 ( *Go >* )

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( *Go >* )

Site Map     Customer Service     Forms     Gov't Services     Careers     Privacy Policy     Terms of Use     Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA



**NOTICE TO BORROWER: YOU SHOULD BE AWARE THAT THE UNDERSIGNED IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NOTICE OF FORECLOSURE**
*Pursuant to the R.C.W.Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

Trustee No.: WA-USB-1110235

The attached Notice of Trustee's Sale is a consequence of defaults in the obligation to US BANK, NA, the current Beneficiary of your Deed of Trust and owner of the obligation secured thereby. Unless the default(s) is/are cured, your property will be sold at public auction on August 12, 2011.

To cure the default(s), you must bring the payments current, cure any other defaults and pay accrued late charges, and other costs, advances and attorney's fees as set forth below by August 1, 2011 [11 days before sale date]. To date, these arrears and costs are as follows:

| | Currently due to reinstate on 05/13/11 | Estimated Amount due to reinstate on 08/01/11 |
|---|---|---|
| Delinquent Payments from 08/01/10: | | |
| 10 payments at $ 1,953.78 each | $ 19,537.80 | $ 19,537.80 |
| 3 payments at $ 1,953.78 each (08-01-10 through 05-13-11) | $ 0.00 | $ 5,861.34 |
| Late Charges | $ 547.40 | $ 547.40 |
| Beneficiary Advances | $ 0.00 | $ 0.00 |
| Suspense Credit | $ 0.00 | $ 0.00 |
| | Estimated Amounts: | |
| Trustee Fee | $ 725.00 | $ 725.00 |
| Statutory Mailings | $ 45.00 | $ 60.00 |
| Auctioneer | $ 0.00 | $ 99.00 |
| Bankruptcy Check | $ 125.00 | $ 125.00 |
| Statutory Mailings | $ 55.20 | $ 55.20 |
| Posting Cost (NOD) | $ 120.00 | $ 120.00 |
| Posting Cost (NOTS) | $ 120.00 | $ 120.00 |
| Publication Cost | $ 0.00 | $ 800.00 |
| Publication Set-Up | $ 99.00 | $ 0.00 |
| Recording Cost (Assn) | $ 15.00 | $ 15.00 |
| Recording Cost (Discontinuance) | $ 63.00 | $ 0.00 |
| Recording Cost (NOTS) | $ 66.00 | $ 66.00 |
| Recording Cost (Sub) | $ 15.00 | $ 15.00 |
| Recording Cost (SWD) | $ 0.00 | $ 15.00 |
| Recording Cost (TD) | $ 0.00 | $ 75.00 |
| TSG Guarantee Policy | $ 864.00 | $ 864.00 |
| TOTAL: | $ 22,397.40 | $ 29,100.74 |

WA NOF

1

To pay off the entire obligation secured by your Deed of Trust as of May 5, 2011 you must pay a total of $232,383.64 in principal, $12,674.20 in interest, plus other costs and advances estimated to date in the amount of $1,857.20.    From and after the date of this notice you must submit a written request to the Trustee to obtain the total amount to pay off the entire obligation secured by your Deed of Trust as of the payoff date.

As to the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust, you must cure each such default.  Listed below are the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust.  Opposite each such listed default is a brief description of the action necessary to cure the default and a description of the documentation necessary to show that the default has been cured.

| Default | Description of Action Required to Cure Default and Documentation Necessary to Show Cure |
|---|---|
| FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 8/1/2010, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH. | Payment and/or proof of payment. |

You may reinstate your Deed of Trust and the obligation secured thereby at any time up to and including August 1, 2011 [11 days before the sale date] by paying the amounts set forth or estimated above and by curing any other defaults described above.  Of course, as time passes other payments may become due, and any further payments coming due and any additional late charges must be added to your reinstating payment.  Any new defaults not involving payment of money that occurs after the date of this notice must also be cured in order to effect reinstatement.  In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate or to pay off the entire indebtedness may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the Trustee before the time you tender reinstatement or the pay off amount so that you may be advised of the exact amount you will be required to pay.  Tender of payment or performance must be made to ASSET FORECLOSURE SERVICES, INC., whose address is 5900 Canoga Avenue, Suite 220, Woodland Hills, CA 91367, telephone (877)237-7878.  PAYMENT OF FUNDS MUST BE IN THE FORM OF A CERTIFIED OR CASHIER'S CHECK.

**AFTER August 1, 2011, YOU MAY NOT REINSTATE YOUR DEED OF TRUST BY PAYING THE BACK PAYMENTS AND COSTS AND FEES AND CURING THE OTHER DEFAULTS AS OUTLINED ABOVE.**  The Trustee will respond to any written request for current payoff or reinstatement amounts within ten days of receipt of your written request.  In such case, you will only be able to stop the sale by paying, before the sale, the total principal balance ($232,383.64) plus accrued interest, costs and advances, if any, made pursuant to the terms of the documents and by curing the other defaults as outlined above.

You may contest this default by initiating court action in the Superior Court of the county in which the sale is to be held.  In such action, you may raise any legitimate defenses you have to this default.  A copy of your Deed of Trust and documents evidencing the obligation secured thereby are enclosed.  You

WA NOF

2

may wish to consult a lawyer.  Legal action on your part may prevent or restrain the sale, but only if you persuade the court of the merits of your defense.

The court may grant a restraining order or injunction to restrain a Trustee's Sale pursuant to RCW 61.24.130 upon five days' notice to the Trustee of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made.  This notice shall include copies of all pleadings and related documents to be given to the judge.  Notice and other process may be served on the Trustee at:

**LSI TITLE AGENCY, INC.**
**C/O ASSET FORECLOSURE SERVICES, INC.**
**22837 Ventura Blvd., Suite 350**
**Woodland Hills, CA 91364**
**(877) 237-7878**

If you do not reinstate the secured obligation and your Deed of Trust in the manner set forth above  or if you do not succeed in restraining the sale by court action, your property will be sold.  The effect of such sale will be to deprive you and all those who hold by, through or under you of all interest in the property.

**Sale Information Line: 714-730-2727 or Website: http://www.lpsasap.com**

DATED:  May 5, 2011.

LSI TITLE AGENCY, INC., AS TRUSTEE BY ASSET
FORECLOSURE SERVICES, INC., AS AGENT for the Trustee
13920 SE Eastgate Way, Suite 115, Bellevue, WA 98005

By
Lilian Solano, Trustee Sale Officer

WA NOF

3

When recorded, mail to:

**ASSET FORECLOSURE SERVICES, INC.**
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367

Trustee's Sale No: WA-USB-1110235                    Loan No: 7884516168

### NOTICE OF TRUSTEE'S SALE
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

I

NOTICE IS HEREBY GIVEN that the undersigned Trustee, **LSI TITLE AGENCY, INC.**, will on **August 12, 2011,** at the hour of **10:00 AM**, at **THE MAIN ENTRANCE TO THE WHATCOM COUNTY COURTHOUSE, 311 GRAND AVENUE, BELLINGHAM, WA,** sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of WHATCOM, State of Washington:

LOT 31, VILLAGE OF NOOKSACK, RECORDED ON DECEMBER 28, 2005, UNDER AUDITOR'S FILE NO. 2051204867, RECORDS OF WAHTCOM COUNTY, WASHINGTON. SITUATE IN WHATCOM COUNTY, WASHINGTON.

Tax Parcel No: 400429-384243, commonly known as 510 ALLISON WAY , NOOKSACK, WA.

The Property is subject to that certain Deed of Trust dated 10/3/2007, recorded 10/4/2007 , under Auditor's/Recorder's No. 2071000747,  records of WHATCOM County, Washington, from MATTHEW FRASE AND MICHELLE A. FRASE, HUSBAND AND WIFE, as Grantor, to ROUTH CRABTREE OLSEN-JAMES MIERSMA, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, the beneficial interest in which is presently held by US BANK, NA.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

The default(s) for which this foreclosure is/are made are as follows:

FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 8/1/2010, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.

Failure to pay when due the following amounts which are now in arrears:

|  | Amount due as of<br>May 13, 2011 |
|---|---|
| Delinquent Payments from August 01, 2010<br>10 payments at $ 1,953.78 each<br>(08-01-10 through 05-13-11) | $       19,537.80 |
| Late Charges: | $          547.40 |
| TOTAL: | $       20,085.20 |

IV

The sum owing on the obligation secured by the Deed of Trust is: Principal $232,383.64, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on August 12, 2011. The default(s) referred to in paragraph III must be cured by August 1, 2011 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before August 1, 2011, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after August 1, 2011, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

MATTHEW FRASE, 510 ALLISON WAY, NOOKSACK, WA, 98276
MICHELLE A. FRASE, 510 ALLISON WAY, NOOKSACK, WA, 98276

by both first class and certified mail on 03/22/2011, proof of which is in the possession of the Trustee; and on 3/22/2011, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the

NOTS

STATE OF CALIFORNIA                    )

successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid.  The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

X

NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants and tenants.  After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceeding under the Unlawful Detainer Act, Chapter 59.12 RCW.

**Sale Information Line: 714-730-2727 or Website: http://www.lpsasap.com**

DATED:  May 5, 2011.

LSI TITLE AGENCY, INC., AS TRUSTEE BY ASSET
FORECLOSURE SERVICES, INC., AS AGENT FOR
THE TRUSTEE
13920 SE Eastgate Way, Suite 115, Bellevue, WA 98005

By_____
Lilian Solano, Trustee Sale Officer

# EXHIBIT "H" ATTACHED

# (HEREUNDER)

August 2, 2011

MATTHEW FRASE
510 ALLISON WAY
NOOKSACK, WA 98276

Contact No.: _(360) 389-1527_

Certified Mailing: ___7011 1570 0002 2607 6205___

U.S. BANK HOME MORTGAGE
P.O. Box 20005
Owensboro, KY  42304-0005

## THIS IS A LETTER OF DISPUTE

Sirs:

I recently pulled my credit report and found that US BANK HOME MTG Account #515788451**** is reporting derogatory information in my account.  I do not recall ever having this account and dispute this.

Sincerely,

Matthew Frase

Register / Sign In

 **USPS.COM**

Search USPS.com or Track Packages

| Quick Tools | Ship a Package | Send Mail | Manage Your Mail | Shop | Business Solutions |

# Track & Confirm

GET EMAIL UPDATES     PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70111578000226076205 | First-Class Mail® | Acceptance | August 02, 2011, 5:24 pm | LAKEWOOD, WA 98499 | **Expected Delivery By:** August 6, 2011 Certified Mail™ |

### Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2011 USPS. All Rights Reserved.